# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

                     Plaintiff,

-vs-                                                 Case No. 6:11-cv-1440-Orl-18GJK

JAMES DAVIS RISHER AND DANIEL
JOSEPH SEBASTIAN,

                     Defendants.
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

    This cause came on for consideration, without oral argument, on the following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT OF PERMANENT INJUNCTION AND OTHER RELIEF AGAINST DEFENDANT JAMES DAVIS RISHER** |
| **FILED:** | **January 23, 2012** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

## I.    BACKGROUND

    On August 29, 2011, Plaintiff, the Securities and Exchange Commission, filed a seven-count Complaint against Defendants, James Davis Risher (hereafter "Risher") and Daniel Joseph Sebastian (hereafter "Sebastian" and sometimes collectively with Risher as "Defendants"). Doc.

No. 1. The allegations of the Complaint, as set forth below, indicate that, in 2007, Defendants established a private fund marketed under the following names: Managed Capital Fund, Safe Harbor Private Equity Fund and Preservation of Principal Fund (hereafter "Fund"). Doc. No. 1 at 1, 4 ¶ 11. Sebastian was held out as the "Fund's managing partner and Risher as responsible for handling the trading operations." Doc. No. 1 at 9 ¶ 31.

In early 2007, Risher gave Sebastian several sets of offering materials (hereafter "Materials") to solicit potential investors. Doc. No. 1 at 4 ¶ 12. The Materials touted Risher and Sebastian as unique individuals who used their "expertise to 'create an investment vehicle that would allow investors to capitalize from both bull and bear markets.'" Doc. No. 1 at 4 ¶ 11. The Materials encouraged investors to invest in the Fund, representing they would be obtaining pro rata shares of the Fund's profits. Doc. No. 1 at 4 ¶ 11.

The Materials indicated that the Fund used three investment strategies with varying levels of risk with a goal of obtaining annualized returns ranging from 12% to 51%. Doc. No. 1 at 4 ¶ 13. The Materials represented that the Fund's annual historical returns ranged from 14% to 124%. Doc. No. 1 at 4, ¶ 13. The Materials indicated the Fund had a management fee of 2% of all assets and a performance fee of 20% of all profits. Doc. No. 1 at 5, ¶ 14. From 2007-2010, Sebastian used the Materials to solicit investors in numerous states, including Florida and California, and Canada. Doc. No. 1 at 5, ¶ 15. Sebastian persuaded former insurance customers to take monies from their insurance and annuity products and invest them in the Fund, representing that they would receive a higher rate of return than the previous products he had sold them. Doc. No. 1 at 5, ¶ 15. Sebastian hosted golf tournaments and other promotional events to solicit investors. Doc. No. 1 at 6, ¶ 21.

Sebastian provided investors with electronic Fund newsletters, touting "Risher's trading skill and substantial investment experience." Doc. No. 1 at 5-6, ¶ 18. Excerpts from some of these newsletters indicate that Sebastian told investors their principal would be protected at all costs and trading at more than one-to-one leverage would be a rare exception. Doc. No. 1 at 8, ¶ 27. Sebastian also touted "Risher's trading expertise and ability, as well as the fund's success in comparison to other investments." Doc. No. 1 at 8, ¶ 27. In a 2009 newsletter, Sebastian "discussed specific trades the Fund had purportedly made and told investors he spent three weeks . . . sitting next to Risher and observing his trading." Doc. No. 1 at 8, ¶ 27.

In 2010, Sebastian began distributing a DVD containing video testimonials from other investors about himself and the Fund. Doc. No. 1 at 6, ¶ 19. In 2010, Risher told a prospective investor that he was in charge of trading securities for the Fund and that the investment strategies had yielded a 17% annual return since 2007. Doc. No. 1 at 6, ¶ 20. During an investor event in March 2010, Risher told investors that "his job was to 'keep us what we like to call market neutral, and that means that we have the ability to profit hopefully on the upside as things go up and try to remain with a bias toward things unexpectedly going bad and going short when things go down.'" Doc. No. 1 at 6, ¶ 22. At this event, Sebastian told investors that after investing in the Fund "'you start making more money than you've ever made in your life . . . . And then all of a sudden you start making enough money where you don't have to go to work. . .[a]t Safe Harbor, you could retire today, like right now. And I'm telling you, you get rid of the struggle.'" Doc. No. 1 at 6, ¶ 21.

Sebastian directed investors to send their monies by check or wire transfer to an "account in the name of Jade Asset Group, which was under Risher and his wife's exclusive control."

3

Doc. No. 1 at 7, ¶ 23. Some investors sent checks to other entities controlled by Risher: Capital Trading Partners, LLC, Managed Capital, LLC, and Isle FX Trading, LLC. Doc. No. 1 at 7, ¶ 23. Upon receipt, "Risher signed and sent confirmations" that their funds were received. Doc. No. 1 at 7, ¶ 23. Neither Risher nor Sebastian filed registration statements pursuant to the Securities Act with Plaintiff for any Fund offerings. Doc. No. 1 at 5, ¶ 17. Sebastian sent account statements showing quarterly returns ranging from 2.28% to 5.64%. Doc. No. 1 at 7, ¶ 26. These account statements were generated by "using purported percentage returns for each of the Fund's strategies that Risher sent him through email or text messages. He also calculated the Defendants' management and performance fees based on these communications from Risher." Doc. No. 1 at 8, ¶ 26.

Despite receiving over $22,000,000 in investor funds, Risher only placed $2,500,000 in a brokerage account, of which he lost $890,000 through his trading activity. Doc. No. 1 at 7, ¶ 24. Risher used $3,600,000 to pay "periodic distribution and redemption requests" between January 2007 and July 2010. Doc. No. 1 at 7, ¶ 25. Risher paid himself $4,800,000 and Sebastian $3,300,000 in management and performance fees, despite the payments not being earned. Doc. No. 1 at 7, ¶ 25. Risher used $4,500,000 to purchase "jewelry, gifts, purchases of real property in North Carolina and Florida, and personal expenses such as credit card and property tax payments." Doc. No. 1 at 7, ¶ 25.

In December 2009 and January 2010, Risher and Sebastian solicited investors to purchase shares in the Safe Harbor Real Estate Investment Trust (hereafter "Safe Harbor REIT"). Doc. No. 1 at 8, ¶ 29. Sebastian told potential investors that Risher would use investment proceeds to buy distressed real property at a discount and then reap the profits after the property was sold.

4

Doc. No. 1 at 8, ¶ 29. The minimum investment was $100,000 and Fund investors were allowed to roll over $50,000 of their Fund investment to invest in the Safe Harbor REIT, with the remainder being paid to Isle FX Trading. Doc. No. 1 at 9, ¶ 29. Thirteen investors invested $890,000 in the Safe Harbor REIT and Risher deposited the monies into a brokerage account where he lost more than $71,000 through his trading activity. Doc. No. 1 at 9, ¶ 30. Risher transferred approximately half of the remaining monies into bank accounts he controlled and used the rest to purchase "jewelry, electronics, foreign currency, payments to a construction company, and other personal expenditures." Doc. No. 1 at 9, ¶ 30.

Defendants made a number of misrepresentations in promoting and operating the Fund and Safe Harbor REIT. First, and foremost, Defendants did not disclose that they were operating a Ponzi scheme.[1] Doc. No. 1 at 12, ¶ 39. Second, Risher misrepresented his background. Doc. No. 1 at 12, ¶ 43. Risher represented that he worked for an investment brokerage firm between 1977 and 1998, owned a retail brokerage, as well as a wealth and asset management business. Doc. No. 1 at 13, ¶ 43. Risher has never held any securities licenses, nor owned or been associated with a registered broker-dealer. Doc. No. 1 at 13, ¶ 43. In fact, Risher was incarcerated from February 1990 through November 1993 and again from February 1996 through October 2002, for violating state and federal securities laws. Doc. No. 1 at 13, ¶ 43. These facts were never disclosed to investors. Doc. No. 1 at 13, ¶ 43.

Third, Sebastian told investors that they would never lose their principal, even providing written guarantees from a company he wholly owned: Safehaven, Inc. Doc. No. 1 at 13, ¶ 44.

---

[1] A Ponzi scheme is named after Charles Ponzi and is a fraudulent investment scheme whereby existing investors are paid with monies contributed by new investors, with all investors promised high returns. http://www.sec.gov/answers/ponzi.htm.

The guarantee indicated that "Sebastian, as Fund manager, was required to keep a stop loss on all active trades placed in the Fund, and the Fund was required to maintain a certain cash reserve at all times." Doc. No. 1 at 13, ¶ 44. Sebastian had no basis to assure investors they would not lose their principal because Sebastian knew Safehaven had no assets to guarantee against investment losses and knew he could not place a stop loss on trades or verify that the Fund had any cash reserve because he had no access to the Fund's brokerage accounts. Doc. No. 1 at 14, ¶ 45.

Fourth, the newsletters and Materials Sebastian distributed contained misrepresentations. In one newsletter, Sebastian assured investors that if Risher attempted to abscond with investors' funds he would "'quickly see what was happening.'" Doc. No. 1 at 14 ¶ 46. In another newsletter, Sebastian told investors that he, Risher and others had the ability to inspect the books to verify that the numbers being reported was accurate. Doc. No. 1 at 14 ¶ 46. These representations were false because Sebastian did not have access to the brokerage accounts where the investor's money was purportedly held. Doc. No. 1 at 14 ¶ 46. In another newsletter, Sebastian claimed the Fund was audited by an organization in Bermuda. Doc. No. 1 at 15 ¶ 50. This statement was either knowingly or recklessly false because the financial documents Sebastian reviewed were unaudited on their face, required ignoring red flags that indicated they were fake and because Sebastian did not communicate with any auditors concerning the Fund. Doc. No. 1 at 15 ¶ 51.

Fifth, Risher drafted the Materials that were given to investors. Doc. No. 1 at 12 ¶ 40. The Materials described the Fund's trading strategies and that the equity trading was done through a "FINRA-registered clearinghouse." Doc. No. 1 at 12 ¶ 40. This statement was false because Risher deposited only a fraction of the investor's funds into a brokerage account,

conducted minimal trading and knew that the Fund's only source of income was new investors. Doc. No. 1 at 12 ¶ 40. Risher falsely represented that investor's funds would be protected by the Securities Investor Protection Corporation and that the Fund was registered in the Bahamas. Doc. No. 1 at 14 ¶¶ 47-48. Risher falsely represented that the Fund was audited by Capital Requirements, Ltd., located in Bermuda, when no such entity exists. Doc. No. 1 at 15 ¶ 49.

Sixth, Risher provided false financial statements which Sebastian used to create account statements that were sent to investors. Doc. No. 1 at 10-11, 15. Risher knew the financial statements were false. Doc. No. 1 at 15 ¶ 52. "Sebastian knew or was extremely reckless in not knowing the returns in the account statements were false" because Sebastian did not see any brokerage statements, a list of investment holdings, or any other financial records. Doc. No. 1 at 16 ¶ 53. Rather, Sebastian "simply entered the percentage returns he obtained from Risher into computer software to generate the investor statements." Doc. No. 1 at 16 ¶ 53. Sebastian did this despite having concerns about Risher wiring distribution funds late, knowing Risher sent an investor a $125,000 check that was returned for insufficient funds and being denied access to the Fund's brokerage records. Doc. No. 1 at 9, 11 ¶¶ 32, 35, 37.

Based on the foregoing alleged facts, Plaintiff's Complaint alleges seven counts. Count I alleges a claim for selling unregistered securities in violation of Sections 5(a) and (c) of the Securities Act, 15 U.S.C. § 77e(a), (c), against Defendants. Doc. No. 1 at 16. Count II alleges fraud in the offering or sale of securities in violation of Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1), against Defendants. Doc. No. 1 at 17. Count III alleges fraud in the offering or sale of securities in violation of Section 17(a)(2) and (a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2), (3), against Defendants. Doc. No. 1 at 18. Count IV alleges fraud in the purchase or

sale of securities in violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, against Defendants. Doc. No. 1 at 18. Count V alleges a claim for aiding and abetting in violation of Section 10(b) and Rule 10b-5of the Exchange Act, against Defendants. Doc. No. 1 at 19. Count VI alleges a claim against Risher for fraud by an investment advisor in violation of Section 206(1) and (2) of the Investment Advisers Act (hereafter "Advisers Act"), 15 U.S.C. §§ 80b-6(1), (2). Doc. No. 1 at 20. Count VII alleges a violation of Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4), and Rule 206(4)-8, 17 C.F.R. § 275.206(4)-8, against Risher as the primary violator and Sebastian as an aider and abettor. Doc. No. 1 at 21.

As a result of the violations alleged in Counts I-VII, Plaintiff requests a declaratory judgment that Defendants have violated the federal securities laws. Doc. No. 1 at 21. Plaintiff requests a permanent injunction enjoining Defendants and all persons "in active concert or participation with them" from violating Sections 5(a), 5(c) and 17(a)(1)-(3) of the Securities Act; Section 10(b) and Rule 10b-5 of the Exchange Act; Sections 206(1), (2) and (4) of the Advisers Act; and Rule 206(4)-8 promulgated under the Advisers Act. Doc. No. 1 at 22. Plaintiff requests an order directing Defendants to disgorge their ill-gotten gains, including prejudgment interest. Doc. No. 1 at 22. Plaintiff requests an "order directing the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d) and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), and as to Risher, pursuant to Section 209(e) of the Advisers Act, 15 U.S.C. §80b-9(e)." Doc. No. 1 at 22. Plaintiff also requests the Court retain jurisdiction "to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the [Plaintiff] for additional relief

within the jurisdiction of this Court." Doc. No. 1 at 23.

On September 20, 2011, Plaintiff filed its return of service indicating that Risher was served on September 9, 2011, via his attorney, Thomas Ostrander, Esq., who represented that he was authorized to accept service on Risher's behalf. Doc. No. 7. On December 6, 2011, pursuant to Plaintiff's motion and Sebastian's written consent, the Court entered a final judgment permanently enjoining Sebastian from violating the enumerated provisions of the Securities Act, Exchange Act and Advisers Act. Doc. No. 10 at 1-5. The Court also entered a final judgment of disgorgement and civil penalty against Sebastian, but indicated it would "determine the amounts of the disgorgement and civil penalty" upon motion by Plaintiff. Doc. No. 10 at 5. The Court also awarded prejudgment interest "from October 8, 2010 to the date of entry of the order of disgorgement against Sebastian, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2)." Doc. No. 10 at 5. The Court also retained jurisdiction to enforce the final judgment. Doc. No. 10 at 6.

On December 8, 2011, the clerk entered a default against Risher. Doc. No. 13. On January 23, 2012, Plaintiff moved for a default judgment against Risher (hereafter "Motion") on Counts I, II, IV-VII. Doc. No. 14.

## II. THE LAW

The mere entry of a default by the Clerk does not in itself warrant the entry of a default judgment by the Court. Rather, the Court must find that there is a sufficient basis in the pleadings for the judgment to be entered. *Nishimatsu Constr. v. Houston Nat'l Bank*, 515 F.2d

1200, 1206 (5th Cir. 1975).[2] A default judgment has the effect of establishing as fact the plaintiff's well-pled allegations of fact, and bars the defendant from contesting those facts on appeal. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (*citing Nishimatsu*, 515 F.2d at 1206). "As a general rule, the court may enter a default judgment awarding damages without a hearing only if the amount of damages is a liquidated sum, an amount capable of mathematical calculation, or an amount demonstrated by detailed affidavits." *Directv, Inc. v. Huynh*, 318 F. Supp.2d 1122, 1129 (M.D. Ala. 2004) (*citing Directv, Inc. v. Griffin*, 290 F. Supp.2d 1340, 1343 (M.D. Fla. 2003)).

## III. ANALYSIS

### A. Count I - Sections 5(a) and (c) of the Securities Act, 15 U.S.C. §§ 77e(a), (c)

To establish violations of Sections 5(a) and (c) of the Securities Act, Plaintiff must prove three elements: 1) Risher sold or offered to sell securities; 2) using interstate transportation or communication and the mails; and 3) there was no registration statement in effect for the securities. *Sec. & Exchange Comm'n v. Cont'l Tobacco Co. of South Carolina*, 463 F.2d 137, 155 (5th Cir. 1972). In the Motion, Plaintiff asserts that the purported sale of pro rata shares in the Fund were securities in the form of investment contracts. Doc. No. 14 at 11. An investment contract is a security as defined in 15 U.S.C. § 77b(a)(1). An investment contract is a "contract, transaction, or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946).

The first prong, investment of money, is satisfied by the investor giving up "some

---

[2] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted all cases decided by the former Fifth Circuit before October 1, 1981.

tangible and definable consideration." *S.E.C. v. Unique Fin. Concepts, Inc.*, 119 F. Supp. 2d 1332, 1337 (S.D. Fla. 1998). The second prong, common enterprise, is satisfied when the "offer explicitly state[s] that investors' funds will be pooled and apportioned proportionately . . . to each account." *S.E.C. v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1200 (11th Cir. 1999). The third prong, expecting profits solely from the efforts of another, turns on the amount of control the investor retains over his investment. *Albanese v. Fla. Nat'l Bank of Orlando*, 823 F.2d 408, 410 (11th Cir. 1987). "If the investor retains the ability to control the profitability of his investment, the agreement" is not a security. *Id.*

In the Complaint, Plaintiff alleges that investors invested their money with the understanding they would receive a pro rata share in the Fund. Doc. No. 1 at 4-5, 7 ¶¶ 11, 15, 17, 23. Plaintiff alleges that Defendants claimed to use their expertise so investors could capitalize during both bull and bear markets. Doc. No. 1 at 4, ¶ 11. Plaintiff alleges that Defendants represented that the Fund used three investment strategies of varying levels of risk to achieve annualized returns ranging from 12% to 51%. Doc. No. 1 at 4, ¶ 13. Plaintiff alleges that Defendants received a management fee and performance fee. Doc. No. 1 at 5, ¶ 14. Plaintiff also alleges that Defendants used interstate commerce and the mails to sell securities, and the securities were not registered. Doc. No. 1 at 16-17 ¶¶ 56-57.

These allegations sufficiently establish that Defendants sold securities, in the form of an investment contract, using interstate commerce and the mails, and that the securities were not registered. Accordingly, it is **RECOMMENDED** that the Court find Risher has violated Sections 5(a) and (c) of the Securities Act.

B.  Counts II and IV – Section 17(a)(1) of the Securities Act, Section 10(b) and Rule 10b-5 of the Exchange Act

To establish a violation of Section 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act, Plaintiff must establish the following elements: 1) a material misrepresentation or omission; 2) made in connection with the purchase or sale of a security; 3) scienter; and 4) the use of a interstate commerce, the mails or a national securities exchange. *United States Sec. & Exchange Comm'n v. Corp. Relations Group, Inc.*, No. 6:99CV1222ORL28KRS, 2003 WL 25570113 at *7 (M.D. Fla. Mar. 28, 2003).

Plaintiff alleges that Risher made numerous misrepresentations by stating that he traded securities in the Fund, when, in fact, he was operating a Ponzi scheme; drafting false account statements; providing false financial statements; and drafting the Materials which contained numerous false representations. Doc. No. 1 at 6-7, 10, 12-16 ¶¶ 20, 26, 33-34, 39-41, 44-53. Plaintiff alleges that Risher failed to disclose his prior convictions and imprisonment for violating securities laws. Doc. No. 1 at 12-13 ¶ 43. These facts are undoubtedly material. *See Sec. & Exchange Comm'n v. Merchant Capital, LLC*, 483 F.3d 747, 766 (11th Cir. 2007) (test for materiality is whether a reasonable person would attach significance to the misrepresented fact or omission in determining how to act).

Plaintiff alleges that Risher used interstate commerce and the mails to sell securities. Doc. No. 1 at 17-18 ¶¶ 60, 66. Plaintiff alleges that Risher knowingly made the misrepresentations. *See* Doc. No. 1 at 12, 14-15, 18 ¶ 41, 47, 49, 52, 63. Scienter is established when it is shown the defendant had the "intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.2 (1976). Accordingly, it is **RECOMMENDED** that

the Court find Risher has violated Section 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act.

### C. Count V – Aiding and Abetting Violations of Section 10(b) and Rule 10b-5 of the Exchange Act

Liability for aiding and abetting is established when "some other party has committed a securities law violation," the defendant "had general awareness that his role was part of an overall activity that is improper," and the defendant "knowingly and substantially assisted the violation." *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 94 (5th Cir. 1975) (quoting *SEC v. Coffey*, 493 F.2d 1304, 1316 (6th Cir. 1974)). Plaintiff alleges that the Fund violated Section 10(b) and Rule 10b-5 of the Exchange Act and Risher knowingly assisted the Fund in violating these provisions of the Exchange Act. Doc. No. 1 at 19-20 ¶¶ 69-70. Accordingly, it is **RECOMMENDED** that the Court find Risher aided and abetted the Fund in violating Section 10(b) and Rule 10b-5 of the Exchange Act.

### D. Counts VI and VII – Violations of Sections 206(1), (2), (4) and Rule 206(4)-8 of the Advisers Act

The Advisers Act is codified at 15 U.S.C. § 80b et. seq. Section 206(1) of the Advisers Act prohibits an investment adviser from using the mails or interstate commerce to "employ any device, scheme or artifice to defraud any client or prospective client." 15 U.S.C. § 80b-6(1). Section 206(2) prohibits an investment adviser from using the mails or interstate commerce to "engage in any transaction, practice or course of business which operates as a fraud or deceit upon any client or prospective client." 15 U.S.C. § 80b-6(2). Section 206(4) prohibits an investment adviser from using the mails or interstate commerce to "engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative." 15 U.S.C. § 80b-6(4). A

13

violation of Section 206(4) is established when an investment adviser to a pooled investment vehicle makes a false statement of material fact, omits a material fact that would make the statement not misleading or otherwise engages in a practice, act or course of business that is fraudulent, deceptive or manipulative with respect to a current or prospective investor in a pooled investment vehicle. 17 C.F.R. § 275.206(4)-8(a).

15 U.S.C. § 80b-2(11) defines an investment adviser as a person "who, for compensation, engages in the business of advising others . . . as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities." Under Rule 206(4)-8, a pooled investment vehicle includes an "investment company," as defined in 15 U.S.C. § 80a-3. An investment company includes any issuer which "holds itself as being engaged primarily, or proposes to engage primarily, in the business of investing, reinvesting or trading in securities." 15 U.S.C. § 80a-3(a)(1)(A). To prove a violation of Section 206(1) requires a showing of scienter. *Steadman v. S.E.C.*, 603 F.2d 1126, 1134 (5th Cir. 1979). A violation of Section 206(2) and (4) does not require such a showing. *Id.*; *S.E.C. v. Steadman*, 967 F.2d 636, 647 (D.C. Cir. 1992).

Plaintiff alleges that Risher, for compensation, advised others on the value of securities or regarding the "advisability of investing in, purchasing, or selling securities, including shares of the Fund." Doc. No. 1 at 5 ¶ 16. Thus, Risher meets the definition of an investment advisor. *See* 15 U.S.C. § 80b-2(11). Plaintiff alleges that Risher touted the Fund as using "three investment strategies at varying levels of risk. Risher . . . claimed the Fund invested in blue chip stocks, exchange-listed equities, options, and other investment vehicles, depending on the

14

strategy employed." Doc. No. 1 at 4 ¶ 13. Plaintiff also alleges that Risher knowingly made several misrepresentations and omitted material facts, perhaps the most relevant of which was that he was operating a Ponzi scheme. *See* Doc. No. 1 at 6-7, 10, 12-16 ¶¶ 20, 26, 33-34, 39-41, 43-53. Accordingly, it is **RECOMMENDED** that the Court find Risher has violated Sections 206(1), (2), (4) and Rule 206(4)-8 of the Advisers Act.

### E.  Remedies

#### 1.  Permanent Injunction

Plaintiff is entitled to injunctive relief when it establishes a "prima facie case of previous violations of federal securities laws" and a "reasonable likelihood that the wrong will be repeated." *S.E.C. v. Calvo*, 378 F.2d 1211, 1216 (11th Cir. 2004). In determining the reasonable likelihood that the wrong will be repeated, the Court looks at the following factors: "'egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of the conduct, and the likelihood that the defendant's occupation will present opportunities for future violations.'" *Id.* (quoting *SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1322 (11th Cir. 1982)). Although scienter is an important factor, it is not a prerequisite to awarding injunctive relief. *Id.*

Plaintiff alleges that, in 1996, Risher pled guilty to mail fraud, federal securities fraud and two counts of money laundering. Doc. No. 1 at 3 ¶ 6. Thus, Plaintiff has established that Risher has previously violated federal securities laws.

In regard to whether there is a reasonable likelihood that Risher will repeat his wrongful behavior, the factors favor granting injunctive relief. Plaintiff alleges that Risher obtained

15

$22,000,000 in investor's funds, but only placed $2,500,000 in a brokerage account; Risher kept $9,300,000 as payment for his services and to pay for personal expenses, such as jewelry and credit card payments. Doc. No. 1 at 7 ¶¶ 24-25. Coupled with Plaintiff's allegations that Risher knowingly perpetrated the fraud, Plaintiff has established that Risher's actions were egregious and done with scienter.

Plaintiff represents that Risher is currently imprisoned for the fraud alleged in the Complaint. Doc. No. 14 at 20.[3] Risher's previous conviction for federal securities fraud, in conjunction with his prior conviction for state securities law fraud and his current conviction, indicates that his actions are not isolated. A clerk's default has been entered against Risher by virtue of his failure to defend against the suit. Although Risher has admitted the well-pled facts of the Complaint, he has neither made assurances that he will not violate federal securities law in the future nor acknowledged the wrongfulness of his actions. Although Risher is currently imprisoned and, therefore is not working, there is no indication that Risher will not avail himself of future opportunities to swindle investors. In fact, his actions, as alleged in the Complaint, indicate quite the opposite. Accordingly, it is **RECOMMENDED** that the Court enter a permanent injunction, permanently enjoining Risher from violating Sections 5(a) and (c) of the Securities Act, Section 17(a)(1) of the Securities Act, Section 10(b) and Rule 10b-5 of the Exchange Act and Sections 206(1), (2), (4) and Rule 106(4)-8 of the Investment Advisers Act.

2. Disgorgement and Civil Penalties

Plaintiff is "entitled to disgorgement upon producing a reasonable approximation of a defendant's ill-gotten gains." *Calvo*, 378 F.3d at 1217. Plaintiff requests the Court enter a civil

---

[3] *See U.S.A. v. Risher*, No. 8:11-cr-343-SDM-TGW (M.D. Fla. filed Dec. 8, 2011).

penalty against Risher pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d). Doc. No. 14 at 22. Both Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act authorize imposing civil penalties. The amount of the penalties prescribed is divided into three tiers. *See* 15 U.S.C. § 77t(d)(2)(A)-(C); 15 U.S.C. § 78u(d)(3)(A)-(C).

In the Motion, Plaintiff represents that it is "currently seeking authority from the five-member Commission to pursue a disgorgement amount in light of Risher's recent criminal sentence." Doc. No. 14 at 21. Plaintiff also represents that it currently "does not have authority from the five-member Commission to recommend a specific [civil] penalty amount." Doc. No. 14 at 22. Plaintiff requests the Court give it ninety (90) days to obtain authority for specific disgorgement and civil penalty amounts. Doc. No. 14 at 21-22.

Accordingly, it is **RECOMMENDED** that the Court find Plaintiff is entitled to the relief of disgorgement and civil penalties and grant Plaintiff ninety (90) days from the date the Court enters judgment to obtain authority to seek specific amounts.

IV. **CONCLUSION**

Based on the foregoing, the undersigned **RECOMMENDS** the following:

1. The Motion be **GRANTED**;

2. A permanent injunction be entered against Risher; and

3. Plaintiff be given ninety (90) days from the date the Court enters judgment to obtain authority to seek specific disgorgement and civil penalty amounts, as well as move the Court to enter judgment regarding same.

Failure to file written objections to the proposed findings and recommendations

contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**The Clerk is directed to send a copy of this report and recommendation to James Davis Risher by Certified Mail.**

**RECOMMENDED** in Orlando, Florida on May 22, 2012.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
**Unrepresented Parties by Certified Mail**